UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– v. –

DONALD MCINTOSH,

                Defendant.

**OPINION & ORDER**

12 Cr. 72 (ER)

Ramos, D.J.:

    Donald McIntosh is currently serving a 150-month sentence at FCI Hazelton, a medium security prison in West Virginia, and is scheduled to be released on July 9, 2023, after which he will serve four years' supervised release. Before the Court is McIntosh's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Doc. 139. For the reasons set forth below, McIntosh's motion is DENIED.

## I. BACKGROUND

### A. Prior Proceedings

    McIntosh was arrested on February 24, 2012. On March 19, 2012, a grand jury in the Southern District of New York returned a Superseding Indictment S1 12 Cr. 72 (ER) ("the Indictment"), charging McIntosh and three co-defendants with conspiring to distribute more than 280 grams of cocaine base and more than 50 kilograms of marijuana; with discharging firearms in furtherance of a drug trafficking crime; with conspiring and attempting to commit Hobbs Act robbery; and with using firearms in relation to a crime of violence. Doc. 11.

    On January 9, 2013, McIntosh pled guilty to a drug trafficking conspiracy (a lesser-included offense of count 1); possession and brandishing of a firearm in connection with a drug trafficking offense (a lesser-included offense of count 2); and conspiracy to commit Hobbs Act

robbery. Doc. 113 at 23-28. McIntosh admitted at the plea hearing that he had joined the conspiracy with other members of the Elm Street Wolves and Cliff Street Gangsters in Yonkers in approximately September 2011, when he was eighteen years old. *Id.* at 20, 26.

At the February 6, 2014 sentencing, the Court sentenced McIntosh to 150 months' incarceration and four years' supervised release. Doc. 71. The Court found that McIntosh's conduct constituted a "very, very serious offense" that "took place over a period of years and involved violence and the use of guns," and that such conduct destabilized neighborhoods and communities. *Id.* at 25: 2-10. The Court declined to sentence McIntosh at the lowest end of the sentencing guidelines, based on his "horrendous" behavior and record of violations while in pretrial detention. *Id.* at 26: 1-10. However, the Court also reviewed letters of support from McIntosh's mother and sister, which described McIntosh's difficult upbringing, his family situation and his brothers' disabilities, and McIntosh's challenges in school as a child. *Id*. at 25: 13-24. When McIntosh was a young child, he witnessed his father physically abuse his mother over a period of several years. Doc. 139 at 4. In considering McIntosh's childhood and family situation, the Court found that he was a very young person who still had "very many opportunities … to turn your life around" and to "be reunited with your family and to continue to do well by them." Doc. 71, 26: 11-20.

On May 7, 2018, McIntosh appealed his conviction pursuant to 28 U.S.C. § 2255, following *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). Doc. 104. On July 23, 2019, the Second Circuit dismissed McIntosh's appeal and affirmed his conviction and special assessment. Doc. 117.

McIntosh now brings the instant motion for compassionate release. He is twenty-eight years old and is scheduled to be released on July 9, 2023. Doc. 139-9. McIntosh and his family

have struggled during the COVID-19 pandemic. His maternal uncle, who had supported the family, passed away in April 2020. Doc. 139-7. His mother works as a special education aide while also caring for at least three minor children, including two young sons with autism who require significant support. Doc. 139 at 6.

### B. McIntosh's Motion

On August 14, 2020, while at the Atlanta Transfer Facility, McIntosh submitted a written request for compassionate release to the Bureau of Prisons (BOP). Doc. 143-1. McIntosh requested that the BOP file a motion for compassionate release on his behalf, citing, among other factors, his fear of contracting COVID-19 in prison and his health problems. *Id.* The BOP did not respond to McIntosh's request.

On March 29, 2021, McIntosh filed this motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Doc. 139. McIntosh argues that he is at increased risk of severe illness should he contract COVID-19 due to his obesity, which constitutes an underlying comorbidity, and because he suffers from other unresolved health problems. Doc. 139 at 2. McIntosh argues that he is in danger of contracting COVID-19 at FCI Hazelton, where, as of March 29, one person had died of the virus and eight people had tested positive. *Id.* McIntosh further explains that he has suffered from pain, trembling, and numbness in his legs for about a year, and although he received an MRI to rule out diagnoses of Multiple Sclerosis and ALS several weeks after referral, his symptoms persist unresolved. *Id.*

The Government opposes McIntosh's motion. Doc. 143. The Government argues that McIntosh has not exhausted his administrative remedies as to four arguments included in his motion. *Id.* at 4. The Government concedes that McIntosh's obesity is a comorbidity that would typically constitute an extraordinary and compelling reason for compassionate release but points

3

out that McIntosh refused the Pfizer vaccine when offered. *Id.* at 5. The Government argues that McIntosh's other health issues are not extraordinary and compelling reasons, and that McIntosh has not shown that he is not receiving adequate care. *Id.* at 5-6. Finally, the Government contends that the gravity of the underlying offense and McIntosh's disciplinary history while in custody weigh against compassionate release. *Id.* at 6.

## II. LEGAL STANDARD

### A. 18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Crim. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted). Under 18 U.S.C. § 3582, a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur: Either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has fully exhausted all administrative rights. 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act, sole authority rested with the BOP to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling." *See* U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1(D). The BOP Policy Statement includes as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A)(ii)(I). It also permits the Court to consider whether the incarcerated person "is not a danger to the safety of any other person or to the community, as

4

provided in 18 U.S.C. § 3142(g)." *Id.* at § 1B1.13(2). However, the Second Circuit in *United States v. Brooker* recently held that the First Step Act also "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions or compassionate release." *See* 976 F.3d 228, 237 (2d Cir. 2020).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in Section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed; and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

### III. DISCUSSION

#### A. Exhaustion

Congress has mandated that a prisoner may only bring a compassionate release motion on his own behalf after exhaustion of his administrative rights or the passage of 30 days. 18 U.S.C. § 3582(c)(1)(A). Both parties agree that McIntosh submitted his written request for release to the warden of the Atlanta Transfer Facility on August 14, 2020, and that the BOP failed to respond to his request. Docs. 139-1, 143-1. However, the Government argues that McIntosh has not exhausted his administrative remedies as to several of his claims underlying his motion for compassionate release, including his obesity as a risk factor for severe COVID-19, his exposure to domestic violence as a child, and his family's need for his support at home to care for his younger brothers with autism, and therefore the Court may not consider these factors. Doc. 143 at 4-5. McIntosh opposes the Government's issue exhaustion argument, relying on several cases

from this district that have excused defendants' failure to exhaust administrative remedies, whether issue exhaustion or the requirement of exhaustion altogether.  *See, e.g.*, *United States v. Torres*, 464 F. Supp. 3d 651, 655 (holding that issue exhaustion is not required for compassionate release motions); *United States v. Pena*, 459 F. Supp. 3d 544, 548 (S.D.N.Y. 2020) (excusing defendant's failure to exhaust administrative remedies); *United States v. Zukerman*, 451 F. Supp. 3d 329, 333 (S.D.N.Y. 2020) (same).

The Court agrees with McIntosh that exhaustion does not require a defendant's motion for compassionate release to be identical to his request to the BOP to bring a motion on his behalf.  *See, e.g.*, *United States v. Resnick*, 451 F. Supp. 3d 262, 269 (S.D.N.Y. 2020) (finding that defendant had exhausted his administrative remedies where his initial written request to the BOP, submitted in February 2020, more than 30 days before his motion for compassionate release, did not mention COVID-19); *United States v. Gluzman*, No. 96 Cr. 323 (LJL), 2020 WL 4233049, at *11 (S.D.N.Y. July 23, 2020), *reconsideration denied*, No. 96 Cr. 323 (LJL), 2020 WL 6526238 (S.D.N.Y. Nov. 5, 2020) (same).  McIntosh raised the same principal underlying claims in his request for compassionate release to the warden that he raises in the present motion: his fear of contracting COVID-19, his unresolved health problems and pain, his desire to reunite with his family, his efforts towards rehabilitation, and his future goals of working with youth.  Doc. 143-1.  While McIntosh did not specifically point out in his request to BOP that he has obesity, which puts him at greater risk of serious illness due to COVID-19, the arguments that McIntosh raises now, through counsel, are substantially similar to those he made to BOP.  Doc. 139.  More than 30 days have elapsed since McIntosh requested that BOP file a motion for compassionate release on his behalf.  Therefore, the Court finds that McIntosh has exhausted his administrative remedies and his motion is ripe for adjudication.

B.      **Extraordinary and Compelling Reasons**

McIntosh's motion focuses on his increased risk of severe illness should he contract COVID-19 due to his obesity, an underlying medical condition, and on his other persistent, unresolved health issues. Doc. 139 at 2. The Government concedes that obesity would typically constitute an extraordinary and compelling reason given the pandemic but contends that it is McIntosh's declining to accept the COVID-19 vaccine when offered, rather than his underlying obesity, that puts his health at risk should he contract COVID-19. Doc. 143 at 5. McIntosh was offered the Pfizer vaccine in March 2021 and declined it. Doc. 143 Ex. 2.[1] McIntosh argues that he declined the vaccine based on his family's belief that childhood vaccinations harmed his younger brother's health and development, and because he was not aware that his obesity placed him in greater danger should he contract COVID-19. Doc. 144 at 3-4. While the Centers for Disease Control and Prevention ("CDC") recognize that there may be many factors driving vaccine hesitancy among incarcerated or detained populations,[2] McIntosh's access to the highly effective Pfizer vaccine mitigates any extraordinary and compelling health reasons justifying compassionate release. *See United States v. Bryant*, No. 6 Cr. 17 (LTS), 2021 WL 738838, at *2 (S.D.N.Y. Feb. 24, 2021); *see also United States v. Goston*, No. 15-20694, 2021 WL 872215, at *2 (E.D. Mich. Mar. 9, 2021).

McIntosh has not shown that his other unspecified health problems rise to the level of extraordinary and compelling reasons for release. McIntosh states that he is experiencing pain, tingling sensations, headaches, weakness in his limbs, and an unexplained lump in his chest, with

---

[1] The Government has filed McIntosh's medical records under seal.

[2] *See* Marc. F Stern MD et al., *Willingness to Receive a Covid-19 Vaccine among Incarcerated or Detained Persons in Correctional and Detention Facilities—Four States, September-December 2020*, 70 U.S. DEP'T. HEALTH & HUM. SERV. CTR. FOR DISEASE CONTROL & PREVENTION MORBIDITY & MORTALITY WKLY. REP. 473 (2021).

discharge. Docs. 139-6 at 1, 143-1. While the Court does not doubt that McIntosh may be in genuine distress and pain due to his unresolved symptoms, McIntosh's medical records show that he has received medical care while in BOP custody and that his most recent laboratory and neurological exams were unremarkable. Doc. 139-2; Doc. 143 Ex. 3. McIntosh has not shown that his symptoms have "substantially diminished" his ability to function at FCI Hazelton. *See United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (denying compassionate release where, although defendant had several serious health conditions, he was able to manage these conditions in custody); *see also United States v. Pomales*, No. 16 Cr. 826 (LTS), 2020 WL 4677596, at *2–3 (S.D.N.Y. Aug. 8, 2020), *appeal docketed*, No. 20-3137 (2d Cir. Sept. 10, 2020) (denying compassionate release when defendant's condition did not substantially diminish his ability to care for himself).

Finally, the other factors McIntosh raises—his youth at the time of his offense, his difficult childhood and upbringing, and his family's need for McIntosh's support at home—do not constitute extraordinary and compelling reasons for McIntosh's compassionate release. The Court considered these factors in imposing McIntosh's sentence. Doc. 71, 26: 11-20. The Court acknowledges that McIntosh's family has suffered from the death of McIntosh's uncle in April 2020. Docs. 139-6 at 2, 139-7. However, this loss is not an extraordinary and compelling reason meriting McIntosh's release.

### C. The Remaining Section 3553 Factors

Additional factors under 18 U.S.C. § 3553(a) counsel against release even if extraordinary and compelling reasons were shown. At the plea hearing, McIntosh admitted to very serious conduct, including conspiracy to commit drug trafficking and robbery and the use of firearms. The Court has considered the severity of similar conduct in denying compassionate

release to one of McIntosh's co-defendants. *See Marquis Jacobs v. United States*, Doc. 138 at 7 (noting his involvement in the same years-long conspiracy and his prior violent conduct). McIntosh has also incurred several disciplinary infractions in custody. While McIntosh has not incurred any serious infractions in the last three years, he was sanctioned for striking another person in January 2018. Doc. 139-4 at 1.

The Court acknowledges that McIntosh has taken full advantage of the programming available to him, completed his GED, and now has positive plans and goals for the future. Doc. 139-6. The Court recognizes McIntosh's achievements and growth and encourages him to continue. However, "rehabilitation alone cannot support a motion for compassionate release," when extraordinary and compelling reasons have not been established. *United States v. Walden*, No. 96 Cr. 962 (LAK), 2020 WL 7870670, at *4 (S.D.N.Y. Dec. 31, 2020). Moreover, the countervailing factors of McIntosh's serious offense conduct and § 3553(a)(6), the need to avoid unwarranted sentencing disparities among similarly situated individuals, also weigh against release for McIntosh.

### IV. CONCLUSION

For the reasons discussed, McIntosh's motion for compassionate release is denied. The Clerk is respectfully directed to terminate the motions, Docs. 139, 143, and 144.

It is SO ORDERED.

Dated: April 28, 2021
      New York, New York

                                                                EDGARDO RAMOS, U.S.D.J.